# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEGACY HEALTH
d/b/a LEGACY EMANUEL HOSPITAL
AND HEALTH CENTER,
2801 N. Gantenbein
Portland, Oregon 97227

LEGACY HEALTH
d/b/a LEGACY GOOD SAMARITAN HOSPITAL
AND HEALTH CENTER,
1015 NW 22nd Avenue
Portland, Oregon 97210

LEGACY HEALTH
d/b/a LEGACY MERIDIAN PARK HOSPITAL,
19300 SW 65th Avenue
Tualatin, Oregon 97062

LEGACY HEALTH
d/b/a LEGACY SALMON CREEK HOSPITAL,
2211 NE 139th Street
Vancouver, Washington 98686

               Plaintiffs;

    v.

KATHLEEN SEBELIUS, Secretary
United States Department of
Health and Human Services,
200 Independence Avenue, S.W.
Washington, DC 20201,

               Defendant.

Civil Action Number: _____

## COMPLAINT FOR JUDICIAL REVIEW OF AGENCY REGULATION AND FOR DECLARATORY AND OTHER RELIEF UNDER THE MEDICARE ACT

The above-named Plaintiffs, by and through their undersigned counsel, state the following by way of their Complaint against Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services (the "Secretary" or the "Defendant").

Complaint

**Nature of Action**

1.    Legacy Health (formerly known as Legacy Health System), a not-for-profit Oregon corporation, owns and operates the four Plaintiff hospitals and parties to this action ("the Legacy Providers"), all of which participate in the Medicare and Medicaid programs. The Legacy Providers bring this action regarding their fiscal year ending ("FYE") 3/31/06 and 3/31/07 Medicare cost reports, to challenge the validity of the Secretary's regulation at 42 C.F.R. § 412.106(b)(2)(i) and (iii), which requires that all inpatient days attributable to patients entitled to benefits under a Medicare Part C managed care plan pursuant to 42 U.S.C. § 1395w-21 (also known as "Medicare Advantage" or "Medicare+Choice"), be included in the Medicare or "SSI" fraction of the Providers' Medicare disproportionate share hospital ("DSH") payment calculation as defined at 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

2.    The Medicare DSH statute requires that all patient days included in the SSI fraction must be attributable to inpatients "entitled to benefits under Part A." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The challenged regulation, 42 C.F.R. § 412.106(b)(2)(i) and (iii), reflects the Secretary's recent re-interpretation of this statutory requirement to mean that patients who have elected to enroll in a Medicare Part C managed care program are also entitled to benefits under Part A. This recent re-interpretation violates the statutory definition of the SSI fraction, and thereby unlawfully excludes from the Medicaid fraction portion of the DSH calculation as set forth 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I), Medicaid-eligible inpatient days attributable to Medicare Part C patients.

3.    On October 5, 2010, the Provider Reimbursement Review Board ("PRRB") issued a unanimous decision granting the Providers' Request for Expedited Judicial Review ("EJR"). During the pendency of the Providers' EJR request before the PRRB, the Secretary of

Health and Human Services and her agents did not oppose the Providers' request. The PRRB found EJR appropriate because the PRRB lacks authority to invalidate the regulation at 42 C.F.R. § 412.106(b)(2)(i) and (iii). Pursuant to 42 U.S.C. §1395oo(f)(1), the PRRB's decision is final and not subject to review by the Secretary.

4.      This Court recently addressed the issues raised in this action, and held that under the plain language of the Medicare statute, patients enrolled in Medicare Part C plans are not "entitled to benefits under Part A," and therefore must be excluded from the SSI fraction and included in the numerator of the Medicaid fraction if those patients had Medicaid eligibility on the dates of service. *Northeast Hospital v. Sebelius*, 699 F.Supp.2d 81, 93 (D.D.C. 2010).

5.      Consistent with this Court's prior decision in *Northeast Hospital*, this Court should invalidate the Secretary's construction of the statute because it violates Congress's intent expressed in the plain, unambiguous language of the Medicare DSH statute, is arbitrary and capricious, and is otherwise contrary to law.

## Jurisdiction and Venue

6.      This action arises under: (a) Title XVIII of the Social Security Act, as amended (42 U.S.C. § 1395 *et seq.*), which establishes the Medicare Program; and, (b) the Administrative Procedure Act, 5 U.S.C. § 551 *et seq* (the "APA").

7.      Pursuant to 42 U.S.C. § 1395oo(f)(1), this Court has jurisdiction when the PRRB grants EJR. 42 U.S.C. §1395oo(f) also provides for venue in this Court. This Court has authority to grant the relief requested under 42 U.S.C. §1395oo(f)(1) and the APA.

## Parties

8.      The Plaintiffs in this action are the following non-profit hospitals:

a.      Legacy Health d/b/a Legacy Emanuel Hospital and Health Center, Medicare Provider No. 38-0007;

b.   Legacy Health d/b/a Legacy Good Samaritan Hospital and Medical Center, Medicare Provider No. 38-0017;

c.   Legacy Health d/b/a Legacy Meridian Park Hospital, Medicare Provider No. 38-0089; and

d.   Legacy Health d/b/a Legacy Salmon Creek Hospital, Medicare Provider No. 50-0150.

9.   Defendant is Kathleen Sebelius, the Secretary of the United States Department of Health and Human Services ("HHS"). The Secretary is the federal officer responsible for the administration of the Medicare Program pursuant to the Social Security Act. References herein to the Secretary are to her, her staff, and to her predecessors or successors based on the context of the reference.   The Secretary has delegated day-to-day operation and administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS") (formerly known as the Health Care Financing Administration or "HCFA"). References herein to CMS refer to the agency and its predecessor, HCFA.

### Framework for Review of Medicare Reimbursement Disputes

10.   Title XVIII of the Social Security Act (hereafter the "Act") establishes the Medicare Program, which provides hospital coverage and medical insurance coverage to the aged, disabled, and certain individuals with end-stage renal disease. *See* 42 U.S.C. § 1395 *et seq.* Under the Act, the Medicare Program makes payments on behalf of an entitled Medicare beneficiary for inpatient and outpatient hospital services provided to the beneficiary by a hospital participating in the Medicare Program as a "provider of services" as the term is defined at 42 U.S.C. § 1395x(u)).

11.   Each hospital that participates in the Medicare Program files a cost report after the conclusion of its fiscal year. 42 C.F.R. §413.20, 413.24. The hospital files this cost report with

- 4 -

Complaint

its designated fiscal intermediary, usually an insurance company, which has contracted with the Secretary and acts as the Secretary's agent. 42 C.F.R. §413.20. A hospital's cost report reflects interim payments received from the Medicare Program during that fiscal year and sets forth adjustments (as contemplated by the Medicare Program) that will result in settlement and correct payment to the hospital for the services it provided during the cost reporting year.

12.     After a hospital files its cost report, the fiscal intermediary determines the amount of payment owed to the hospital. 42 U.S.C. § 1395h. The fiscal intermediary determines the total amount of Medicare reimbursement due to the hospital, based upon detailed payment regulations and instructions promulgated by the Secretary, and provides the hospital with a notice of program reimbursement ("NPR"). *See* 42 C.F.R. § 405.1803; *see also In re Medicare Reimbursement Litig.*, 309 F.Supp.2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005), *cert. denied* 547 U.S. 1054 (2006).    In determining the contents of the NPR, the fiscal intermediary looks not only to the Secretary's regulations, but also to interpretive guidance and instructions which are published by the Secretary in the form of Rulings, Medicare Program manuals, memoranda, and instructive letters (all of which may be relied on by a hospital when filing its cost report).    The NPR states the net amount due to the hospital from the Medicare Program (or vice versa) based upon the fiscal intermediary's reconciliation of interim payments and year-end adjustments.

13.     The Act establishes a review process for a fiscal intermediary's Medicare reimbursement determinations. A hospital may appeal to the PRRB from a fiscal intermediary's final determination as reflected in the NPR. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. The PRRB is an administrative tribunal appointed by the Secretary, and all of the members of the Board are required to be "knowledgeable in the field of payment of providers of services." 42

U.S.C. §1395oo(b). The PRRB has jurisdiction over appeals from final determinations by fiscal intermediaries if: (a) a hospital is dissatisfied with the fiscal intermediary's final determination; (b) the amount in controversy is over $10,000, and (c) the provider requests a hearing within 180 days after receiving the NPR from the fiscal intermediary. 42 U.S.C. § 1395oo(a). The dissatisfaction element required for PRRB jurisdiction may be met both with respect to claims made on the cost report, as well as claims self-disallowed in compliance with regulation, manual, ruling, or some other legal authority. *See id.; see also Bethesda Hosp. Assoc., et al. v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255 (1988).

14. Hospitals under common ownership or control must appeal issues involving a common question of fact or interpretation of law, regulations, or CMS rulings as a group. *See* 42 C.F.R. §§ 405.1837 and 405.1841(a)(2). Such groups are generally referred to as common-issue/related-party or "CIRP" group appeals. For CIRP group appeals, the amount in controversy requirement is, in the aggregate, $50,000 or more. 42 U.S.C. §1395oo(b); 42 C.F.R. §§405.1837(a)(3), 405.1839(b) and (c)/(5).

15. The Secretary has established regulations that govern the PRRB appeals process. *See* 42 C.F.R. §§ 405.1835 through 405.1871. The PRRB has established its own instructions on procedural matters. Following the PRRB's issuance of its decision on a provider's appeal of an NPR, the CMS Administrator, on his own motion, may reverse, affirm or modify the PRRB's decision. 42 U.S.C. § 1395oo(f)(1). The Secretary has also established regulations which govern the CMS Administrator's review of decisions. *See* 42 U.S.C. § 405.1875.

16. A provider has a right to obtain judicial review of any final decision of the PRRB or any reversal, affirmance or modification of the PRRB's decision by the CMS Administrator (who acts on behalf of the Secretary). 42 U.S.C. § 1395oo(f)(1).

17.    A provider also has a right, after filing its appeal with the PRRB to request that the PRRB determine that it lacks the authority to decide a "question of law or regulations relevant to the matters in controversy." 42 U.S.C. § 1395oo(f)(1).  The PRRB must issue a decision on this request, known as a request for expedited judicial review ("EJR"), within 30 days of receiving the provider's EJR request.  *Id.*  In other words, where the PRRB has jurisdiction over an appeal in accordance with 42 C.F.R. § 405.1840 and lacks the authority to decide a question of law (such as a challenge to the validity of a statute, regulation or CMS ruling), the PRRB "must grant EJR."  42 C.F.R. § 405.1842(f), *see also* PRM-I (CMS-Pub 15-1) Ch. 29, §2920.3; and PRRB Rule 42.

18.    If the PRRB determines that it lacks the authority to decide the issue raised in the provider's EJR request, the provider may obtain judicial review by filing suit within 60 days of receipt of the PRRB's EJR decision or, if the PRRB fails to render a decision, within 60 days of the expiration of the PRRB's 30-day determination period. 42 U.S.C. § 1395oo(f)(1).

19.    The PRRB's EJR decision "shall be considered a final decision and not subject to review by the Secretary." 42 U.S.C. §1395oo(f)(1).

20.    Pursuant to 42 U.S.C. §1395oo(f)(1), a provider may file suit in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia.  Providers in a CIRP Group Appeal may file suit in the judicial district in which the greatest number of the providers are located or in the District Court for the District of Columbia. 42 U.S.C. §1395oo(f)(1).

**Medicare Part A**

21.    Under Part A of the Act, the Medicare Program provides for payment of inpatient hospital and other institutional care services. 42 U.S.C. §1395d(a)(1).  An enrollee in Medicare

Part A is entitled to payment on his or her behalf for a limited number of days of inpatient hospital care. *See* 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a). This includes payment for 90 days of inpatient hospital services per episode of illness, as well as a "non-renewable lifetime reserve" of 60 days of inpatient hospital services that a beneficiary may elect to use. *See* 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).

22.     Under the inpatient prospective payment system ("IPPS"), Medicare makes payments to acute care hospitals, such as the Legacy Providers here, for inpatient acute-care services on predetermined, nationally-applicable rates based on a set of diagnosis related groups, commonly referred to as "DRGs". 42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412.

## The Medicare Disproportionate Share Hospital Adjustment

23.     Congress has required that hospitals receiving Medicare payment may also receive certain specified payment adjustments. 42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412. IPPS hospitals that serve a "significantly disproportionate number of low-income patients" are eligible for one of these adjustments, known as the disproportionate share hospital or "DSH" adjustment. 42 U.S.C. §1395ww(d)(5)(F)(i)(I). If the hospital's "disproportionate patient percentage" ("DPP") exceeds certain thresholds, the hospital qualifies for this per-discharge adjustment (with the amount of the additional payment depending on the extent to which the percentage exceeds said thresholds). 42 U.S.C. §1395ww(d)(5)(F)(v) and (vii).

24.     The additional IPPS payment based on the DSH adjustment is determined (for a given cost-reporting period) by computing the DPP, which is the sum of two fractions expressed as percentages. 42 U.S.C. §1395ww(d)(5)(F)(vi). One of the fractions is the Medicare fraction, also known as the Supplemental Security Income or "SSI" fraction. The statute defines the SSI fraction as:

Complaint

- 8 -

the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [Title XVIII] and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [Title XVIII].

42 U.S.C. §1395ww(d)(5)(F)(vi)(I) (emphasis added). CMS computes and publishes each hospital's SSI fraction annually. 42 C.F.R. §§412.106(b)(2)-(3).

25.     The second portion of the DPP is the Medicaid fraction, defined in the statute as:

the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [Title XIX], but who *were not entitled to benefits under part A* of [Title XVIII], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added). The Secretary's agent, the Medicare fiscal intermediary, computes the Medicaid fraction and then determines the hospital's DPP by adding the Medicaid fraction and the CMS-published SSI fraction (both expressed as percentages) together. 42 C.F.R. 412.106(b)(4) and (5). In general, the more Medicaid-eligible inpatient days there are, the larger the DSH adjustment will be.

26.     Medicaid is a joint federal/state program administered by participating states, subject to federal requirements. *See* 42 U.S.C. §1396 *et seq.* A participating state must submit a state Title XIX plan to the Secretary for approval and must operate its Medicaid program in accordance with the approved plan. *See* 42 U.S.C. §1396c. The federal government then will pay federal funds to the participating state to help defray the expense of providing medical assistance to Title XIX (Medicaid)-eligible patients. "Medical assistance" is defined as payment

of federal Title XIX funds for part or all of the cost of benefits, such as inpatient hospital services, afforded to eligible persons. 42 U.S.C. §1396d(a).

27.     Each state that participates in the Medicaid program administers the program and must designate a "single state agency" to do so. 42 U.S.C. §1396a(a)(5). The states have great flexibility in establishing the definitions of individuals who are eligible for Medicaid. 42 U.S.C. §1396a(a)(10)(A)(ii). As such, there is great variability between states as to eligibility for, and the scope of medical assistance benefits under, Medicaid.

28.     In addition, through Section 1115 of the Social Security Act, (codified at 42 U.S.C. § 1315), Congress established a process for the Secretary to waive certain Medicaid requirements governing state Title XIX plans, to allow a requesting state to establish alternative eligibility and coverage standards under its Medicaid program pursuant to an experimental, pilot or demonstration project. Oregon operates the Medicaid program (the Oregon Health Plan) under a Section 1115 demonstration project waiver. OAR 410-141.

<u>Medicare Part C</u>

29.     In 1997, Congress created a new Medicare Part C Program by adding it to Title XVIII of the Social Security Act in Section 4001 of the Balanced Budget Act of 1997, Pub. L. No. 105-33, 111 Stat. 251. Medicare Part C established a managed care Medicare program called Medicare+Choice. In 2003, Congress amended the Part C Medicare+Choice Program and renamed it the Medicare Advantage ("MA") Program in the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub, L. 108-172, 117 Stat. 2006 (referred to herein as "Medicare Part C," "Medicare+Choice," or "Medicare Advantage" depending upon the context).

Complaint

- 10 -

30.     Each Medicare beneficiary has the right to elect to receive benefits through the "original medicare [*sic*] fee for service program under Parts A and B" or "through enrollment in a Medicare+Choice Plan." 42 U.S.C. §1395w-21(a)(1)(A)-(B). To be eligible to enroll in a Medicare+Choice (Medicare Part C) managed care plan, a Medicare beneficiary must be entitled to benefits under Medicare Part A and must be enrolled in Medicare Part B. 42 U.S.C. §1395w-21(a)(3)(A). The effect of enrollment in a Medicare+Choice (Medicare Part C) plan is that "payments under a contract with a Medicare+Choice organization [. . .] shall be *instead of* the amounts which (in the absence of the contract) would otherwise be payable under Parts A and B" of the Act. 42 U.S.C. §1395w-21(i)(1) (emphasis added)).

31.     Under Medicare Part C, the only organization entitled to receive Medicare payments from the Secretary is the Medicare+Choice organization. 42 U.S.C. §1395w-21(i)(2). Medicare Part C pays a fixed or "capitated" amount to the Medicare+Choice organization on behalf of each enrollee, regardless of whether the enrollee receives services. 42 U.S.C. § 1395w-23. Once a Medicare beneficiary elects to enroll in a Medicare Part C managed care plan, Medicare Part A no longer makes payments to participating providers for inpatient services under Part A or outpatient services under Part B of the Act.

32.     Under the Medicare statute, "entitlement of an individual to [Medicare Part A] benefits for a month shall consist of *entitlement to have payment made under, and subject to the limitations in, [Medicare] Part A* [. . .] on his behalf for [certain] services." 42 U.S.C. § 426(c)(1) (emphasis added). This Court has already held that an individual enrolled in a Medicare Part C plan is not entitled to benefits under Medicare Part A because that person is not entitled to have payment made on his or her behalf under Part A. *Northeast Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 93 (D.D.C. 2010).

33.     Since the inception of the Medicare DSH adjustment, the Secretary has interpreted the term "eligible for benefits under [Medicare] part A" in the SSI and Medicare fractions of the DSH calculation to mean entitlement to payment for inpatient services by Medicare Part A and has expressly asserted this interpretation before four Circuit Courts of Appeal. *See Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984, 986-87 (4th Cir. 1996); *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F3d 1261, 1263 (9th Cir. 1996); *Deaconess Health Servs. Corp. v .Shalala*, 83 F3d 1041 (8th Cir. 1996) (per curiam); *Jewish Hosp., Inc. v. Sec'y of Health and Human Servs.*, 19 F.3d 270, 276 (6th Cir. 1994).

34.     Since 1990, the Secretary has interpreted the statutory term "entitled to benefits under Part A" as used in the Medicare dependent hospitals provision at 42 U.S.C. § 1395ww(d)(5)(G) as meaning entitlement to payment because "entitle[ment] to benefits under part A" ends when "[e]ntitlement to payment under part A ceases." 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990).

## Treatment of Part C Days in the Disproportionate Share Hospital Adjustment

35.     Prior to October 1, 2004, Medicare regulations did not include Medicare Part C days in the SSI fraction and the Secretary's policy was to not include Medicare Part C days in the SSI fraction.

36.     In publishing her IPPS Proposed Rule for Federal Fiscal Year 2004 in May of 2003, the Secretary confirmed that her prior policy did not include inclusion of Medicare Part C days in the SSI fraction when she issued a proposed regulatory clarification to expressly state that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27154, 27208 (May 19, 2003). The Secretary went on to explain that these patient days should

be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the [Medicare+Choice] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id.* The Secretary explained her clarification by stating that "once a beneficiary has elected to join a Medicare+Choice plan, that beneficiary's benefits are no longer administered under Part A. Therefore, [. . .] once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." *Id.*

37.  The Secretary, without explanation, did not include her clarification in the Federal Fiscal Year 2004 IPPS Final Rule. 68 Fed. Reg. 45346, 45422 (August 1, 2003).

38.  In August of 2004, the Secretary abandoned her prior policy and adopted a new policy in the Federal Fiscal Year 2005 IPPS Final Rule, and noted that she was "revising [the] regulations at § 412.106(b)(2)(i) to include the days associated with [Medicare+Choice] beneficiaries in the Medicare fraction of the DSH calculation." 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004). The Secretary explained the basis for abandoning her old policy and amending her regulations to reflect her new policy in a single sentence, stating that "once Medicare beneficiaries elect Medicare Part C coverage, they are still, in some sense, entitled to benefits under Medicare Part A." *Id.* The Secretary's explanation of her policy change did not explain how her new interpretation of the statutory term "entitled to benefits under part A" in the Medicare DSH SSI fraction was not inconsistent with the interpretation she articulated before the federal courts and her interpretation of the same statutory term contained in the Medicare dependent hospital statutory provision. The Secretary provided no prior notice of this final regulatory change and did not provide an opportunity for comment.

39.     Thus, effective October 1, 2004 (the start of the federal fiscal year or "FFY" 2005), the Secretary, acting through CMS, announced that the regulation at 42 C.F.R. § 412.106(b)(2)(i) would require, for the first time, inclusion of Medicare Part C inpatient days in the SSI fraction of the DSH calculation.

40.     Subsequent to the Secretary's announcement of her change to 42 C.F.R. § 412.106(b)(2)(B) in the Federal Fiscal Year 2005 IPPS Final Rule on August 11, 2004, CMS discovered that the actual change to the text of the regulation as announced by the Secretary had inadvertently not taken place. Three years later, on August 22, 2007, the Secretary announced in her Federal Fiscal Year 2008 IPPS Final Rule that she had made "technical corrections" to the regulatory language consistent with the change announced back on August 11, 2004. 72 Fed. Reg. 47130, 47384. Specifically, the Secretary amended the regulatory provisions defining the numerator and denominator of the SSI fraction to include patients who are "entitled to Medicare Part A (or *Medicare Advantage (Part C)*)." *Id.* at 47411 (amending § 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added). The Secretary characterized this technical correction as making "no substantive changes" to the regulation, indicating that the Secretary considered the announced change in her regulation already effective beginning October 1, 2004, thereby requiring Part C days to be included in the SSI fraction as of that date. *Id.* at 47384.

41.     On July 20, 2007, CMS issued new instructions stating that "[p]atients who are enrolled in Medicare Advantage . . . should also be included in the Medicare fraction." CMS Change Request 5647, Transmittal No. 1311 (Jul. 20, 2007) at 8. The Change Request required that "hospitals . . . must begin to submit 'no pay' bills to their Medicare contractor for the MA beneficiaries they treat, in order for these days to be eventually captured in the DSH . . . calculations." *Id.* at 1. Accordingly, CMS stated it was revising the Medicare Claims Processing

Complaint

- 14 -

Manual ("MCPM") such that "[h]ospitals may go back and submit claims with discharge dates on or after October 1, 2006 (FY 2007), so that SSI data for FY 2007 and beyond will include MA patient days." *Id.* at 2; *see also* MCPM (CMS Pub. 100-04) Ch. 3 § 20.3 (requiring hospitals to submit informational only bills to "ensure that these days are included in the SSI [fraction] for Fiscal Year 2007 and beyond").

42.    Nearly two years after issuing Change Request 5647, CMS issued Change Request 6329, which required all hospitals that received DSH payments in FFY 2006 and had not otherwise claimed Medicare Advantage days, to submit "informational only" claims to their fiscal intermediary for those Medicare Advantage days for discharges on or after October 1, 2005. *See* Change Request 6329, Transmittal No. 1695 (Mar. 6, 2009). According to Change Request 6329, "[n]on-teaching IPPS hospitals that received Medicare DSH payments in FFY 2006 . . . must submit claims for MA patients with discharge dates on or after October 1, 2005 through September 30, 2006 (FY 2006), in order to ensure that Medicare DSH calculations for FY 2006 accurately reflect MA inpatient days." *Id.*

## The Legacy Providers' Treatment of Part C Days

43.    Each of the Legacy Providers submitted "no pay" or "informational only" claims for Medicare Part C patients for the two cost reporting periods at issue in this appeal, hospital FYEs 3/31/06 and 3/31/07. Specifically, Legacy Emanuel and Legacy Good Samaritan have regularly submitted such claims to the fiscal intermediary since January 1, 1998 for purposes of indirect and direct graduate medical education ("GME") payments pursuant to 42 C.F.R. § 413.76 (direct GME) and 42 C.F.R. § 412.105(g) (indirect GME), Legacy Salmon Creek and Legacy Meridian Park have submitted such claims for FFYs 2006 and 2007.

Complaint                                   - 15 -

44.     Consistent with the Secretary's announced change to the Medicare DSH regulation requiring inclusion of Medicare Part C days in the SSI fraction for discharges occurring on or after October 1, 2004, each of the Legacy Providers omitted Medicaid-eligible inpatient days attributable to Medicare Part C-entitled patients from the Medicaid fraction portion of their cost report claim for Medicare DSH payment. This act of self-omission in conformance with the Secretary's requirements is also known as self-disallowance, a concept discussed in detail by the United States Supreme Court in *Bethesda Hospital Association, et al. v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255 (1988). The Legacy Providers self-disallowed Medicaid-eligible inpatient days attributable to Medicare Part C-entitled patients from the Medicaid fraction in their FYEs 3/31/06 and 3/31/07 cost reports at minimum in the numbers listed below:

- Legacy Emanuel FYE 3/31/06              --      845 days
- Legacy Good Samaritan FYE 3/31/06       --      758 days
- Legacy Meridian Park FYE 3/31/06        --      262 days
- Legacy Salmon Creek FYE 3/31/06         --      115 days
- Legacy Emanuel FYE 3/31/07              --      2,021 days
- Legacy Good Samaritan FYE 3/31/07       --      1,820 days
- Legacy Meridian Park FYE 3/31/07        --      473 days
- Legacy Salmon Creek FYE 3/31/07         --      576 days

## The Legacy Providers' Appeals

45.     The Legacy Providers submitted their FYE 3/31/06 as-filed cost reports to their fiscal intermediary, Noridian Administrative Services (the "Intermediary"), in August of 2006. The Legacy Providers submitted their FYE 3/31/07 as-filed cost reports to the Intermediary in August of 2007. The Legacy Providers' as-filed cost reports for FYEs 3/31/06 and 3/31/07 claimed Medicaid DSH payments, but those DSH payment claims did not reflect inclusion in the Medicaid fraction any inpatient days attributable to patients who had Medicaid eligibility on the days of service and also had entitlement to payment by a Medicare Part C managed care plan for such days.

Complaint                                          - 16 -

46.    In accordance with the Secretary's regulation at 42 C.F.R. § 412.106(b)(2)(i) and (iii), effective October 1, 2004, the Legacy Providers excluded (self-disallowed) all Medicaid-eligible inpatient days attributable to Medicare Part C from their DSH Medicaid fractions for their FYE 3/31/06 and 3/31/07 cost reports. The Legacy Providers knew that, given the announced change in DSH regulations, any attempt to include the Medicaid-eligible Part C days in the Medicaid fraction would be futile. *See Bethesda*, 485 U.S. 399.

47.    The Intermediary finalized each of the Legacy Provider's FYE 3/31/06 and 3/31/07 as-filed cost reports without including any Medicare Part C days in either the SSI or the Medicaid fraction of the DSH calculation. The Intermediary issued the Legacy Providers' NPRs on the following dates:

| | | |
|---|---|---|
| • Legacy Emanuel FYE 3/31/06 | -- | Nov. 9, 2007 |
| • Legacy Good Samaritan FYE 3/31/06 | -- | Nov. 9, 2007 |
| • Legacy Meridian Park FYE 3/31/06 | -- | Sep. 25, 2007 |
| • Legacy Salmon Creek FYE 3/31/06 | -- | Sep. 20, 2007 |
| • Legacy Emanuel FYE 3/31/07 | -- | May 14, 2008 |
| • Legacy Good Samaritan FYE 3/31/07 | -- | May 14, 2008 |
| • Legacy Meridian Park FYE 3/31/07 | -- | Sep. 16, 2008 |
| • Legacy Salmon Creek FYE 3/31/07 | -- | May 15, 2008 |

48.    Upon receipt of the NPRs from the Intermediary for their FYE 3/31/06 and 3/31/07 cost-reporting periods, the Legacy Providers timely filed individual appeals to the PRRB challenging the validity of the regulation at 42 C.F.R. § 412.106(b)(2)(i) and (iii). In addition, the Providers properly transferred their individual appeals to a CIRP Group Appeal because they: (1) were all hospitals under common ownership or control; (2) were appealing a common question of law; and (3) met the amount in controversy requirement of $50,000 or more. *See* 42 C.F.R. §§405.1837 and 405.1841(a)(2); 42 U.S.C. §1395oo(b); 42 C.F.R. §§ 405.1837(a)(3), 405.1839(b) and (c)(5).

49.     The   Legacy   Providers'   CIRP   PRRB   appeal   contended   that   42   C.F.R. §412.106(b)(2)(i) and (iii) violated Medicare law because Medicare Part C-entitled patients are no   longer   "entitled"   to   Medicare   Part   A   benefits,   and   the   DSH   statute   (42   U.S.C. § 1395ww(d)(5)(F)) prohibits inclusion of Medicare Part C days in the SSI fraction, and requires the intermediary to include all Medicaid-eligible Part C inpatient days in the Medicaid fraction in the Medicare cost reports for FYEs 3/31/06 and 3/31/07.

50.     On September 7, 2010, the Providers requested that the PRRB grant EJR on the issue of the validity of the Secretary's regulation at 42 U.S.C. § 412.106(b)(2)(i) and (iii).   On October 5, 2010, the PRRB issued its decision to grant EJR, finding that it had jurisdiction over the   appeal,   but   that   it   lacked   authority   to   determine   the   legal   validity   of   the   regulation   at 42 U.S.C. § 412.106(b)(2)(i) and (iii).

51.     As authorized by 42 U.S.C. § 1395oo(f)(1), the Providers timely initiated this litigation (within 60 days of receipt of the PRRB's grant of EJR) in the U.S. District Court for the District of Columbia (USDC-DC).

<u>Assignment of Errors</u>

52.     The allegations in Paragraphs 1-48 are incorporated as if fully set forth herein.

53.     Under 42 U.S.C. § 1395oo(f)(1), the Medicare statute provides for expedited judicial   review   pursuant   to   the   Administrative   Procedures   Act   ("APA"),   5   U.S.C.   § 706(2), which requires the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law[.]"

54.     The Secretary's decision to include Medicare Part C days in the SSI fraction, and thereby to prohibit inclusion of Medicaid-eligible Part C days in the Medicaid fraction, violates Congressional intent as expressed in the plain language of the Medicare statute, 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)-(II), because Part C enrollees are not "entitled to benefits under Part A." *Northeast Hosp.*, 699 F. Supp. 2d at 93. As a result, the plain language of the Medicare statute requires the fiscal intermediary to include all Part C days attributable to Medicaid-eligible patients in the numerator of the Medicaid fraction because those are days for which beneficiaries were not "entitled to benefits under Part A." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II); *Northeast Hosp.*, 699 F. Supp. 2d at 93.

55.     The Secretary's inclusion of Part C days in the SSI fraction is arbitrary and capricious because it is the opposite of the policy explained by the Secretary in 2003 and inconsistent with her longstanding interpretation of "entitled to benefits under Part A" to mean "entitled to payment under Part A." *See* 55 Fed. Reg. at 35996; *Northeast Hosp.*, 699 F. Supp. 2d at 93. Moreover, the Secretary failed to provide a rational explanation for her policy reversal and resulting regulatory change. *See* 69 Fed. Reg. at 49099.

56.     The Secretary's decision to revise the regulation at § 412.106(b)(2)(i) to include the days associated with Medicare Part C beneficiaries in the SSI fraction of the DSH calculation violated the rulemaking requirements set forth under the APA.   *See* 5 U.S.C. § 553.   The Secretary's new policy violates the notice and comment rulemaking procedures mandated by the APA and the Medicare Act because it is the opposite of the policy explained by the Secretary in 2003 and inconsistent with statements made by the Secretary in 1990, and the Secretary did not afford the public adequate notice of, or a meaningful opportunity to comment upon, the policy change that the Secretary actually made.   Further, the Secretary failed to revise the regulations to

reflect the new policy until the beginning of FFY 2008, and thus they cannot be applied in the calculation of the SSI fractions for prior federal fiscal years.

## Relief Requested

57.     The Legacy Providers respectfully request an Order:

A.      Declaring invalid the Secretary's determination to include Medicare Part C days in the SSI fraction of the Medicare DSH calculation;

B.      Directing the Secretary to recalculate the Legacy Providers' SSI fractions for FYEs 3/31/06 and 3/31/07 by ensuring that Medicare Part C days have been excluded from the numerator and denominator of the SSI fraction, and ensuring that the Intermediary recalculates the Medicaid fraction by including Medicaid-eligible Part C days in the numerator, and to promptly make payment to the Legacy Providers accordingly;

C.      Directing the Secretary to pay interest to the Legacy Providers on any increases in DSH payments due under Sub-Paragraph B above, in accordance with 42 U.S.C. § 1395oo(f)(2);

D.      Directing the Secretary to pay legal fees and costs of suit incurred by the Providers; and

E.      Granting to the Providers such other relief in law and/or equity as the Court may deem just and proper.

Dated:  December 3, 2010.

Respectfully submitted,

SEEGER FAUGHNAN MENDICINO P.C.

By: _____
Julie A. Quagliano, Esq., D.C./Bar No. 393428
2620 P Street, N.W.
Washington, D.C. 20007

Complaint

- 20 -

Telephone: (202) 822-8838
Fax: (202) 822-6982
Email: quagliano@sfmlawfirm.com

and

BENNETT BIGELOW & LEEDOM, P.S.

By: _[signature]_

Sanford E. Pitler, Esq., WSBA No. 16567,
*Pro Hac Vice application to be filed*
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101
Telephone: (206) 622-5511
Fax: (206) 622-8986
Email: pitler@bbllaw.com

Counsel for Plaintiff

- 21 -